BRIAN HEFFNER,                          )
                                        )
                Plaintiff               )    Civil Action
                                        )    No. 13-cv-00194
        v.                              )
                                        )
LIFESTAR RESPONSE OF NEW JERSEY, INC.,  )
  trading and doing business as,        )
  LIFESTAR RESPONSE OF PENNSYLVANIA,    )
                                        )
                Defendant               )

                    *    *    *


APPEARANCES:

        ALBERT J. EVANS, ESQUIRE
        ERIC M. PROCK, ESQUIRE
        JOHN R. KANTNER, ESQUIRE
                On behalf of Plaintiff

        TRISHA M. MAJUMDAR, ESQUIRE
                On behalf of Defendant

                    *    *    *


# O P I N I O N

        This matter is before the court on Plaintiff's Motion
to Remand filed February 11, 2013.  On February 25, 2013,
Defendant's Opposition to Plaintiff's Motion to Remand was
filed.  Defendant removed this case from the Court of Common
Pleas of Lehigh County on January 10, 2013 pursuant to 28 U.S.C.
§ 1441(a), based upon diversity jurisdiction under 28 U.S.C.
§ 1332(a)(1).  For the reasons expressed below, I grant the

motion and remand this case to the Court of Common Pleas of Lehigh County, Pennsylvania.

BACKGROUND

The background of this motion as averred in plaintiff's Complaint is as follows:

Plaintiff Brian Heffner was employed by defendant LifeStar Response of New Jersey, Inc., trading and doing business as LifeStar Response of Pennsylvania ("LifeStar"), as an emergency medical technician ("EMT") from March 2011 until January 2012. In January 2012 a crew-chief position with LifeStar became available. Mr. Heffner applied for, was offered, and accepted, the crew-chief position in January 2012.[1]

During plaintiff's employment with LifeStar, his primary duties involved transporting nursing-home patients to and from medical appointments or emergency treatments. Those patients were transported either in a wheelchair, or in a stretcher; and the LifeStar employee doing the transport filled out a form indicating the method of transport.[2]

LifeStar billed the nursing home or the patient for its transportation services. The amount of the bill depended, in part, on whether the patient was transported by wheelchair or stretcher. The charge for a stretcher transport was greater

---

[1]      Complaint at ¶¶ 7-8 and 15.

[2]      Id. at ¶¶ 16-17.

than for a wheelchair transport.  Medicare and Medicaid
ultimately paid a substantial number of the bills which LifeStar
generated for services rendered.[3]

Plaintiff alleges that, in May or June of 2012, he
noticed that some of the forms being generated by LifeStar
employees for transportation services indicated that patients
were bedridden when, in fact, they were not.  Mr. Heffner also
noticed that patients were being transported by stretcher (the
most expensive method) when, in fact, they could have been
transported by wheelchair.[4]

Plaintiff considered this conduct to be fraudulent and
informed Michelle Seidel, LifeStar's Vice President of
Operations, and Melanie Bell, LifeStar's Operations Manager, of
his concerns.  Mr. Heffner was told that this was none of his
concern.[5]

Plaintiff alleges that in June 2012 Ms. Seidel, the
Vice President of Operations, asked him and others to alter
their forms documenting transportation services rendered.
Specifically, Mr. Heffner and the others were asked to include
more complaints from patients and a longer narrative explaining
why the patient needed stretcher transport, even when that

---

[3]        Complaint at ¶¶ 18-20.

[4]        Id. at ¶¶ 21-22.

[5]        Id. at ¶ 23.

patient could have been transported by wheelchair, and in some cases, could walk.[6]

Plaintiff alleges that he refused to alter his reporting forms when asked to do so by Ms. Seidel, and that he continued to refuse when both Ms. Bell, the Operations Manager, and a billing clerk continued to ask him to do so in June and July 2012.[7]

Mr. Heffner subsequently learned that LifeStar was being audited by Medicare and that transportation forms had been lost and needed to be redone.[8]

In "late" July 2012 plaintiff told another LifeStar employee that he was going to inform Medicare that LifeStar was fraudulently altering its forms to justify the inflated bills paid by Medicare. Mr. Heffner was not satisfied with the employee's response to his stated intention to inform Medicare. Disillusioned by the unreasonable demands he believed LifeStar was imposing, he resigned his position as crew chief on August 7, 2012.[9]

---

[6]     Complaint at ¶¶ 24-23.1  Page 4 of plaintiff's Complaint contains two sets of three paragraphs numbered 22, 23, and 24.  The paragraph numbers are duplicated, but the content is not.  For purposes of this Opinion, I refer to the second set of three paragraphs as 22.1, 23.1, and 24.1.

[7]     Id. at ¶¶ 25-26.

[8]     Id. at ¶ 24.1.

[9]     Id. at ¶¶ 28-29.

Plaintiff alleges that, three hours after resigning his crew-chief position, he was accused of misusing the gasoline card he had been issued by LifeStar for work-related travel and was taken off duty pending further review. On August 29, 2012 LifeStar fired plaintiff based upon his purported misuse of the gasoline card.[10]

### Plaintiff's Claims

In his Complaint, plaintiff asserts two causes of action arising from the foregoing facts.

Count I alleges that the termination of plaintiff's employment violated Pennsylvania's Whistleblower Law.[11] Mr. Heffner claims that he made good-faith reports to his employer about wrongdoing, waste or abuse (namely, LifeStar's alleged attempt to defraud Medicare) and was fired by LifeStar in retaliation for making those reports.

Based upon this alleged violation of Pennsylvania's Whistleblower Law, plaintiff seeks judgment in his favor and against LifeStar in an amount in excess of $50,000, "inclusive of compensatory damages, punitive damages, costs and fees" and

---

[10]      Complaint at ¶¶ 30-31.

[11]      Act of December 12, 1986, P.L. 1559, No. 169, §§ 1-8, 43 P.S. §§ 1421-1428.

asks the court to award him all other appropriate remedies under the Whistleblower Law.[12]

Count II alleges wrongful discharge. Specifically, plaintiff alleges that termination of his employment by LifeStar violated public policy, was done without legal justification, was intended to harm Mr. Heffner, and was done to prevent or dissuade other LifeStar employees from reporting suspected Medicare fraud.

Based upon his alleged wrongful discharge, plaintiff seeks judgment in his favor and against LifeStar in an amount in excess of $50,000, "inclusive of compensatory damages, punitive damages, costs and fees."[13]

### Defendant's Answer and Counterclaims

Defendant LifeStar denies that it engaged in any fraudulent reporting or billing practices, and denies that it fired Mr. Heffner in retaliation for bringing the alleged fraud to the attention of LifeStar's management, or for stating that he intended to report the alleged fraud to Medicare.[14]

Rather, LifeStar contends that plaintiff was fired for using his LifeStar gasoline card to make fuel purchases totaling $3,931.23 for personal use between February 2012 and August 5,

---

[12]      Complaint at page 6 (prayer for relief in Count I).

[13]      Id. at page 8 (prayer for relief in Count II).

[14]      See Answer, New Matter, and Counterclaim at ¶¶ 23-36.

2012.  LifeStar also contends that plaintiff was fired for
failing to attend a meeting with LifeStar management to discuss
his use of the LifeStar gasoline card.[15]

LifeStar also asserts counterclaims for breach of
fiduciary duty (Count I), unjust enrichment (Count II), and
breach of contract (Count III) against Mr. Heffner, based upon
misuse of the gasoline card.

### DISCUSSION

Plaintiff seeks to have this case remanded to the
Court of Common Pleas of Lehigh County, Pennsylvania, based upon
defendant's alleged failure to sustain its burden of
establishing proper diversity jurisdiction under 28 U.S.C.
§ 1332(a)(1).

A dispute exists between the parties concerning which
of them bears the burden of proving, in a removal action on a
motion to remand, whether or not the amount in controversy
exceeds the jurisdictional amount required by 28 U.S.C.
§ 1332(a) in a federal diversity action.

Specifically, plaintiff contends that defendant bears
the burden of establishing an amount in controversy which
exceeds $75,000, and that defendant has failed to carry that
burden.[16]  Conversely, defendant contends that plaintiff bears

---

[15]        Answer, New Matter, and Counterclaim at ¶¶ 75-80.

[16]        Plaintiff's Brief at pages 2-3.

the burden of proving to a legal certainty that he cannot
recover more than $75,000, and that plaintiff has failed to
carry that burden.[17]

Although neither party cites the controlling statutory
provision in its brief, namely, 28 U.S.C. § 1446(c)(2),
Plaintiff's Brief comes closer to stating (and applying) the
applicable standard.[18]

The United States Court of Appeals for the Third
Circuit has stated that "[i]t is now settled in this Court that
the party asserting federal jurisdiction in a removal case bears
the burden of showing, at all stages of the litigation, that the
case is properly before the federal court." Frederico v. Home
Depot, 507 F.3d 188, 193 (3d Cir. 2007); see also McCann v.
Newman Irrevocable Trust 458 F.3d 281, 286 (3d Cir. 2006);
Hodges v. Walgreens, 2012 WL 1439080, at *2 (E.D.Pa. April 26,
2012)(Schiller, J.).[19]

---

[17]        Defendant's Brief at pages 2-3 and 7.

[18]        See Plaintiff's Brief at pages 1-3; Defendant's Brief at
pages 1-7.

[19]        At oral argument, defendant's counsel argued that the Hodges case
is distinguishable because the plaintiff's state-court complaint there,
unlike plaintiff's Complaint in this case, expressly pled damages below the
$50,000 state-court arbitration threshold.   Hodges, 2012 WL 1439080, at *2.

        In Hodges, my colleague United States District Judge Berle M.
Schiller, relying in part on Frederico, granted plaintiff's motion to remand
because defendants did not demonstrate, to a legal certainty, that the amount
in controversy exceeded the federal jurisdictional threshold.   Id. at *3-5.

                            (Footnote 19 continued):

Moreover, the removal statute is to be strictly construed, with all doubts about the existence of federal jurisdiction resolved in favor of remand. Hodges, 2012 WL 1439080, at *2; Inaganti v. Columbia Properties Harrisburg LLC, 2010 WL 2136597, at *2 (E.D.Pa. May 25, 2010) (Buckwalter, S.J.).

Here, plaintiff filed his Complaint in the Court of Common Pleas of Lehigh County, Pennsylvania. Defendant removed the case to this court based upon its assertion that jurisdiction is conferred by 28 U.S.C. § 1332(a)(1). Accordingly, defendant is the party urging jurisdiction upon this court and bears the burden of proving that such jurisdiction is proper. Frederico, 507 F.3d at 193; McCann, 458 F.3d at 286.

---

(Continuation of footnote 19):

Where, unlike this case, a plaintiff's state-court complaint expressly limits the amount in controversy to an amount less than the federal jurisdictional threshold amount, a removing defendant "has a higher burden and must prove to a legal certainty that the amount in controversy exceeds the jurisdictional requirement." Id. at *3 (citing Frederico, 50 F.3d at 196-197; and Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006)).

Defense counsel's attempt to distinguish the Hodges case at oral argument would have been of greater consequence if plaintiff had argued, orally or in his brief, that defendant was required to prove, to a legal certainty, that the amount in controversy here exceeds $75,000. However, the argument advanced by plaintiff's counsel was that this case should be remanded because defendant failed to make any showing concerning the amount in controversy, and, accordingly did not satisfy its burden of proof (the quantum of which was never specifically asserted by plaintiff's counsel at argument or in his brief).

As explained in this Opinion, plaintiff did not expressly limit his damages to an amount below the federal jurisdictional amount; and, therefore, defendant must prove by a preponderance of the evidence that the federal jurisdictional threshold amount has been satisfied.

Having established that defendant bears the burden of proving proper jurisdiction, we turn to the questions of what defendant's burden is, and whether that burden has been satisfied.

The statute governing the procedure for removal based upon diversity jurisdiction was amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011,[20] to, among other things, clarify that the quantum of proof necessary to remove an action on the basis of an amount in controversy is by "the preponderance of the evidence". It provides, in pertinent part:

> (c)(2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--
>
> > (A) the notice of removal may assert the amount in controversy if the initial pleading seeks--
> >
> > > (i) nonmonetary relief; or
> > >
> > > (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
> >
> > (B) removal of the action is proper on the basis of an amount in controversy asserted

---

[20] The Federal Courts Jurisdiction and Venue Clarification Act of 2011 was enacted as the Act of December 7, 2011, P.L. 112-63, sec. 103(b)(3)(C), § 1446(c), 125 Stat 758, codified at, among others, 28 U.S.C. § 1446(c)).

> under subparagraph (A) *if the district court*
> *finds, by the preponderance of the evidence,*
> *that the amount in controversy exceeds the*
> *amount specified in [28 U.S.C. §] 1332(a).*

28 U.S.C. § 1446(c)(2)(emphasis added).

Here, section 1446(c)(2)(A) is satisfied both because plaintiff seeks non-monetary relief, and because plaintiff seeks a money judgment where state practice does not permit demand for a specific sum.

Specifically, Count I of plaintiff's Complaint asserts a cause of action pursuant to the Pennsylvania Whistleblower Law and seeks, in addition to specified types of money damages, "all other appropriate remedies under the [Pennsylvania Whistleblower Law]."

The Remedies provision in Pennsylvania's Whistleblower Law permits a person alleging a violation of that law to bring a civil action for "injunctive relief, damages, or both". 43 P.S. § 1424(a). Moreover, the Enforcement provision of the Pennsylvania Whistleblower Law permits a court entering judgment in an action brought under that law to order "reinstatement of the employee" and "reinstatement of...seniority rights". 43 P.S. § 1425.

Plaintiff alleges that his employment was wrongfully terminated and that his termination violated Pennsylvania's Whistleblower Law, and requests "all other appropriate remedies

under the [Whistleblower Law]", which could include injunctive relief, including reinstatement with seniority rights. Accordingly, I conclude that plaintiff's Complaint seeks nonmonetary relief, and the requirement in section 1446(c)(2)(A)(i) is satisfied.

Alternatively, I conclude that the requirement in section 1446(c)(2)(A)(ii) is satisfied. Neither party disputes the fact that the initial pleading in this case -- namely, plaintiff's state-court Complaint -- makes an open-ended claim for damages in excess of $50,000, the upper threshold for compulsory arbitration in the Court of Common Pleas of Lehigh County.[21]

Moreover, plaintiff's Complaint does not claim liquidated damages. Rule 1021(b) of the Pennsylvania Rules of Civil Procedure provides that "[a]ny pleading demanding relief for unliquidated damages shall not specify any specific sum." Pa.R.Civ.P. 1021(b). Accordingly, I conclude that plaintiff seeks a money judgment where state practice does not permit demand for a specific sum, and thereby satisfies section 1446(c)(2)(A)(ii).

Having established that section 1446(c)(2)(A) is satisfied and, accordingly, that defendant was permitted to assert an amount in controversy in its Notice of Removal, I

---

[21] See Plaintiff's Brief at page 1; Defendant's Brief at page 1.

turn to the question presented by section 1446(c)(2)(B):
whether "removal of the action is proper on the basis of the
amount in controversy asserted [by defendant] under [section
1446(c)(2)](A)". 28 U.S.C. § 1446(c)(2)(B).

In order for removal to be proper on the basis of the
amount in controversy asserted by defendant, I must find, "by
the preponderance of the evidence, that the amount in
controversy exceeds [$75,000, exclusive of interest and costs]."
28 U.S.C. § 1446(c)(2)(B).

Defendant has not met its burden of proving, by a
preponderance of the evidence, that the amount in controversy in
this case exceeds $75,000, exclusive of interest and costs.
Accordingly, I grant plaintiff's motion for remand.

Plaintiff's Brief correctly observes that while the
Complaint indicates that plaintiff seeks total damages in excess
of $50,000, it does not indicate that he seeks total damages in
excess of $75,000, exclusive of interest and costs.[22]

Moreover, plaintiff notes that that defendant has not
identified, much less offered evidence establishing, (1) his
compensation rate; (2) the approximate amount of wages and
benefits Mr. Heffner would have lost as the result of his
allegedly-wrongful termination; or (3) any other evidence or
information from which the court could reasonably conclude,

---

[22]        Plaintiff's Brief at page 3.

without simply guessing, that the amount in controversy in this case exceeds the $75,000 jurisdictional threshold.[23]  Where the court is left to guess at whether the jurisdictional threshold has been met, then a removing defendant has not carried its burden.  <u>Hodges</u>, 2012 WL 1439080, at *2.

Defendant's arguments as to how it has satisfied the amount-in-controversy are, ultimately, unavailing.

Defendant asserts that plaintiff's Complaint seeks damages in excess of $100,000.  Defendant arrives at this sum by the following route: (1) plaintiff's Complaint asserts two claims -- one alleging that defendant violated Pennsylvania's Whistleblower Law (Count I), and a second alleging that plaintiff was wrongfully discharged from his employment by defendant in violation of Pennsylvania common law (Count II); (2) each Count claims damages in excess of the $50,000 state-court compulsory arbitration threshold; and (3) the Counts are not expressly pled in the alternative[24]; therefore, (4) the

---

[23]        Plaintiff's Brief at page 3.

[24]        At oral argument, plaintiff's counsel responded to this assertion from defendant's brief by asserting that Count I and Count II in the Complaint are, in fact, asserted "in the alternative".

Black's Law Dictionary defines "alternative pleading" as "[a] form of pleading whereby the pleader alleges two or more independent claims or defenses that are not necessarily consistent with each other, such as alleging both intentional infliction of emotional distress and negligent infliction of emotional distress based on the same conduct."  BLACK'S LAW DICTIONARY 1271 (9th ed. 2009).

(<u>Footnote 24 continued</u>):

damages claimed in each count are simply added together to produce an amount in controversy "in excess of $100,000".[25]

While there may be a certain appeal to the arithmetic clarity of this argument, defendant does not mention or address the fact that, although each Count of plaintiff's Complaint contains a prayer for relief (as opposed to a global prayer for relief at the end of the complaint), the types of relief sought and the measures of damages sought in each Count overlap substantially.

Specifically, in Count I, plaintiff "respectfully requests that this Honorable Court enter judgment in his favor...in an amount in excess of [$50,000], *inclusive of* compensatory damages, punitive damages, costs and fees, and

---

(Continuation of footnote 24):

Here, although the words "in the alternative" do not appear on the face of the Complaint, review of the Complaint plainly reveals that Mr. Heffner is asserting two independent claims (one statutory claim based upon an alleged violation of the Pennsylvania Whistleblower Law, and one common-law claim for wrongful discharge based upon Mr. Heffner's alleged termination in violation of public policy) based upon the same conduct.

The two independent claims asserted by Mr. Heffner are not inconsistent (as claims of intentional and negligent infliction of emotional distress, or breach of contract and quantum meruit, are inconsistent). Indeed, plaintiff's claims in this case appear to be consistent, but one is not necessarily dependent upon the other to succeed. In other words, plaintiff could conceivably not prevail on his statutory claim and still prevail on his common law claim. Accordingly, I conclude that Count I and Count II of the Complaint are pled alternatively.

[25]        Defendant's Brief at page 4.

At the April 10, 2013 oral argument, defendant's counsel did not expressly present this argument (noting that it is "complicated") and argued that each count in plaintiff's Complaint, assessed on its own, involves an amount in controversy in excess of $75,000. Nonetheless, I do not consider the argument to have been withdrawn or abandoned.

award him all other appropriate remedies under [Pennsylvania's Whistleblower Law]."[26]  Similarly, in Count II, plaintiff "respectfully requests that this Honorable Court enter judgment in his favor...in an amount in excess of [$50,000], *inclusive of* compensatory damages, punitive damages, and costs and fees."[27]

In short, plaintiff's prayer for relief in Count I (whistleblower claim) seeks the same relief as his prayer for relief in Count II (wrongful discharge claim), except that Count I also requests "all other appropriate relief permitted" under the Pennsylvania Whistleblower Law (specifically, reasonable attorney fees).[28]  Plaintiff seeks costs in both Count I and Count II.[29]

Defendant has not provided any authority (and the court is not aware of any) supporting defendant's implicit proposition that plaintiff may recover the same measure of damages twice because that measure of damages is available under multiple causes of action.

Indeed, to the contrary, in <u>Golden ex rel. Golden v. Golden</u> (which defendant cites in its brief), the United States Court of Appeals for the Third Circuit noted that for purposes

---

[26]     Complaint at page 6.

[27]     <u>Id</u>. at page 8.

[28]     <u>Id</u>. at pages 6 and 8; Defendant's Brief at pages 6-7.

[29]     Complaint at pages 6 and 8.

of determining the amount in controversy, "courts do not separately evaluate each of the causes of action asserted by any one plaintiff against any one defendant." 382 F.3d 348, 355 (3d Cir. 2004). The amount of damages available depends not on the number of theories of liability or causes of action, but on the extent of the injury or harm. <u>Thompson v. City of Portland</u>, 620 F.Supp. 482, 489 (D.Me. 1985) (citing <u>Clark v. Taylor</u>, 710 F.2d 4 (1st Cir. 1983)).

Defendant contends that the amount in controversy requirement is satisfied because plaintiff's Complaint seeks punitive damages in addition to compensatory damages, fees and costs.[30]

Plaintiff correctly notes[31] that the Third Circuit Court of Appeals has stated that "[i]f appropriately made...a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of plaintiff's claim is below the statutory maximum." <u>Golden</u>, 382 F.3d at 355.[32]   Indeed,

---

[30]      Defendant's Brief at pages 4-5.

[31]      <u>Id</u>.

[32]      Although it does not impact the outcome of the within motion (because punitive damages are claimed here, and such damages are not precluded on wrongful discharge claims, <u>see</u> <u>Woodson v. AMF Leisurland Center, Inc.</u>, 842 F.2d 699, 703 (3d Cir. 1988)), I note that my colleague United States District Judge Anita B. Brody has held that punitive damages are not available under the Pennsylvania Whistleblower Law.  <u>Rankin v. City of Philadelphia</u>, 963 F.Supp. 463, 478-479 (E.D.Pa. 1997).

"claims for punitive damages may be aggregated with claims for compensatory damages, provided the claims for punitive damages are not 'patently frivolous and without foundation.'" Huber v. Taylor, 532 F.3d 237, 244 (3d Cir. 2008)(quoting Golden, 382 F.3d at 355).

However, in the Golden case cited by defendant, as well as in Huber, the Third Circuit was addressing the legal standard and burden of proof applicable where the amount in controversy is challenged in a suit originally brought in federal court, rather than cases initiated in state court and removed to federal court. Golden, 382 F.3d at 353-355; Huber, 532 F.3d at 242-245.

In those cases initiated by the plaintiff in federal court, a defendant challenging the sufficiency of the plaintiff's amount in controversy (through a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure) is required to demonstrate, to a legal certainty, that the plaintiff cannot recovery an amount above the jurisdictional threshold. See, e.g., Onyiuke v. Cheap Tickets, Inc., 435 Fed.Appx. 137, 139 (3d Cir. 2011)(citing St. Paul Mercury Indemnity Co. v. Red

Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).[33]

Without simply adding the amounts claimed in Counts I and II of the Complaint, the prayers for relief in those counts nonetheless permit the reasonable inference that Count I seeks at least $50,001 in compensatory damages, punitive damages, and costs and fees, plus an additional amount in reasonable attorney fees and costs available under Pennsylvania's Whistleblower Law.

However, as discussed above, defendant bears the burden of proving, by a preponderance of evidence, that the compensatory damages, punitive damages, and costs and fees, plus reasonable attorney fees are in excess of the federal jurisdictional minimum amount in controversy. Defendant has not carried that burden.

The only materials attached to defendant's Notice of Removal, which might be considered record evidence in this matter, consist of (1) the state-court Complaint itself, and (2) correspondence between the parties related to service of the Complaint.

---

[33]    As Professors Wright and Miller have stated:

> In attempting to achieve a sound balance that takes into account both concerns of judicial efficiency and the integrity of the judicial process, the federal courts have developed a principle that if the defendant (or the district judge) challenges the satisfaction of the jurisdictional amount requirement it will succeed only if it is shown that there is a legal certainty that the amount in controversy cannot be recovered. This has become the universal test in the context of *actions that originate in the federal courts*.

14AA FED. PRAC & PROC. JURIS. § 3702 (4th ed.)(emphasis added).

Defendant contends that an award of reasonable attorney's fees might be as much as thirty percent of plaintiff's judgment.[34]  As explained above, it can be reasonably inferred that plaintiff's claimed damages are greater than $50,000, exclusive of the reasonable attorney fees permitted under the Whistleblower Law.  However, as also discussed above, because defendant has not presented any record evidence (and did not offer any witnesses or exhibits at the April 10, 2013 proceeding), I cannot do more than guess at the amount of the judgment by which defendant would have me calculate using the thirty-percent-of-judgment measure suggested in <u>Frederico</u>, 507 F.3d at 199.[35]

Moreover, defendant has not filed, or otherwise submitted, any record evidence together with its opposition to the within motion to remand, and did not request limited jurisdictional discovery in this action.

Although defendant accurately notes that "plaintiff has not specifically limited or in any way claimed that he would

---

[34]        Defendant's Brief at page 7 (citing <u>Frederico</u>, 507 F.3d at 199).

[35]        For example, if a judgment were entered in plaintiff's favor for $50,001, the attorney fees, as defendant would calculate them, would be $15,000 (30% of $50,001).  Assuming arguendo that a thirty-percent-of-judgment was reasonable for plaintiff's counsel in this case, plaintiff's judgment would have to be in an amount greater than $57,692.31 in order to exceed the $75,000 jurisdictional threshold with the addition of attorney's fees (because 30% of $57,692.31 is $17,307.69, which together amounts to $75,000).  Defendant has not provided the court with any evidence upon which to conclude, without guessing, that the amount of damages claimed by plaintiff, exclusive of attorney fees, is greater than $57,692.31.

be prohibited from obtaining the damages sought",[36] defendant does not assert in its brief (or attach any correspondence between the parties or their counsel which would support the conclusion) that, at any time, defendant sought a stipulation from plaintiff limiting plaintiff's prospective damages to $75,000 or less, and that such a request was rejected by plaintiff.[37]

While evidence of a requested-and-rejected stipulation limiting damages, if provided by defendant, may not have been dispositive of the instant amount-in-controversy dispute, record evidence of plaintiff's refusal to stipulate to damages below the jurisdictional threshold would have offered some support for defendant's assertion that plaintiff's claims are truly for more than the jurisdictional minimum amount. Lee v. Walmart, Inc., 237 F.Supp.2d 577, 580 (E.D.Pa. 2002)(Pollak, J.).

Based on the record evidence in this case (or, more precisely, the lack thereof), I cannot, without speculating, conclude that the amount in controversy between the parties exceeds $75,000, exclusive of interest and costs by the preponderance of the evidence. Accordingly, I grant the within motion and remand this case to the Court of Common Pleas of Lehigh County.

---

[36]     Defendant's Brief at page 4.

[37]     Indeed, at oral argument and in response to my question, defense counsel stated that no such stipulation was requested of plaintiff.